**EXHIBIT B**

**REAL ESTATE APPRAISAL REPORT**
**OF A 1-FAMILY PROPERTY LOCATED AT:**

**44 Sunset Road South**
**Albertson, NY 11507**
**[Shyama & Geeta Shukla]**

**WITH AN EFFECTIVE DATE OF VALUATION OF :**
**April 5, 2014**

**APPRAISED VALUE - $880,000**

**PREPARED FOR:**

**Mr. Ehsanhul Habib, Esq.**
**118-21 Queens Boulevard Suite 603**
**Forest Hills, NY 11375**

**PREPARED BY:**

**East Coast Appraisal Service**
**50 Court Street**
**Suite # 508**
**Brooklyn, NY 11201**



**EAST COAST**
APPRAISAL SERVICE

Commercial and Residential Real Estate Appraisers
50 Court St. #508 Brooklyn New York 11201

Email:info@eastcoastappraisal.com
www.eastcoastappraisal.com
Phone:718-834-1700 Fax:718-834-1807

April 8, 2014

Mr. Ehsanhul Habib, Esq.
118-21 Queens Boulevard Suite 603
Forest Hills, NY 11375

RE:   Appraisal Report for property located at:
      44 Sunset Road South [Shyama & Geeta Shukla]
      Albertson, NY 11507

To Whom It May Concern:

As requested, we have conducted an inspection of the above premises in order to estimate the fair and reasonable market value of the fee simple estate as the date of the physical inspection, April 5, 2014. The purpose of this appraisal is to assist in a bankruptcy proceeding.

The subject premises consist of a 2-story 1-family detached frame colonial in average condition with 3,478 square feet of living area that abuts a cemetery to its rear and public school grounds along its side. The parcel of land measures 0.17 acres and is located in Nassau County's "Albertson" neighborhood.

Albertson offers typical suburban amenities including close proximity to all major amenities including Downtown and Midtown Employment centers, parks and recreational facilities. The overall residential real estate market in the neighborhood is currently rated as stable with supply & demand estimated to be in balance.

---

**VALUATION**

In our opinion, the fair and reasonable valuation of the subject premises as of April 5, 2014 is:

**EIGHT HUNDRED EIGHTY THOUSAND [$880,000] DOLLARS**

---

Should you require any additional information, please do not hesitate to contact the undersigned.

Respectfully,

Stephen Ellsworth
Senior Appraiser
NYS Certification # 46000026754

2

# SUMMARY OF SALIENT FACTS AND CONCLUSIONS

LOCATION:                                    44 Sunset Road South
                                             Albertson, NY 11507

COUNTY:                                      Nassau

ASSESSORS PARCEL #:                          07095600830

REAL ESTATE TAXES:                           $21,686 [TAX YEAR 2013-2014]

THREE YEAR SALES HISTORY:                    No listing or sales activity noted over the past 3
                                             years

SECTION VOLUME:                              7

BLOCK:                                       95

LOT:                                         83

LOT SIZE:                                    0.17 acres

CENSUS:                                      3023

IMPROVEMENTS:                                2 -story fully detached 1 -family frame residence

GROSS LIVING AREA:                           3,478 square feet [+-]

GROSS BASEMENT AREA:                         900 square feet [+-]

FLOOD INFORMATION:                           Zone X: (Not in a flood zone)
                                             Map Panel #360482- 0119G 9/05/2007

ZONING INFORMATION:                          Residential

VALUE BY SALES                               $880,000
COMPARISON APPROACH:
VALUE BY COST APPROACH:                      Not Applicable

VALUE BY INCOME APPROACH:                    Not Applicable

FINAL ESTIMATE OF VALUE:                     $880,000

EFFECTIVE DATE OF VALUATION:                 April 5, 2014

3

## IMPROVEMENT DESCRIPTION

| | |
|---|---|
| BUILT: | 1985 |
| FOUNDATION | Poured concrete |
| CONSTRUCTION | Frame |
| EXTERIOR FAÇADE | Cedar shake & stucco |
| ROOF | Pitched/asphalt shingle |
| WINDOWS | Thermopane |
| PARKING | 2 car garage |
| AMENITIES | Deck |

## MECHANICAL

| | |
|---|---|
| PLUMBING | Copper, galvanized piping |
| HEATING | Gas-fired circulating hot water system |
| HOT WATER SUPPLY | Separate hot water heater |
| AIR CONDITIONING | Central air conditioning |
| ELECTRIC | 200 Amp/ 220 Volts |

## LAYOUT

| | |
|---|---|
| BASEMENT: | Finished with recreation room [1] bath, utilities & storage. |
| FIRST FLOOR: | Kitchen, living room, dining room, den, [.5] bath |
| SECOND FLOOR: | [4] Bedrooms, [2] baths |
| TOTAL ROOMS ABOVE GRADE | (8) Rooms, (4) Bedrooms, (2.5) baths. |

## CONDITION

As observed in the physical inspection conducted on April 5, 2014, it was noted that the property is in average condition with some deferred maintenance evident in exterior peeling paint, a stoop in need of repair, and damaged ceiling tiles in the basement which appear to be caused by one or more active leaks from kitchen

**SEE ATTACHED PHOTOGRAPHS FOR ADDITIONAL DOCUMENTATION

## SITE LOCATION

The property abuts a cemetery to its rear and public school grounds along its side property line. These adverse conditions cause a diminution in value known as external obsolescence.

**SEE ATTACHED PHOTOGRAPHS FOR ADDITIONAL DOCUMENTATION

4

# HIGHEST AND BEST USE

Essential to the concept of value is the theory of Highest and Best Use or most profitable use. The Appraisal Institute defines Highest and Best use as follows:

> "The most profitable likely use to which a property can be put. The opinion of such use may be based on the highest and most profitable continuous use to which the property is adapted and needed or likely to be in demand in the reasonably near future. However, elements affecting value which while within the realm of possibility is not fairly shown to be reasonably probable should be excluded from consideration. Also if the intended use is dependent upon an uncertain act or another person the intention cannot be considered.
>
> The use of land which may reasonably be expected to produce the greatest net return to land over a given period of time: the legal use which will yield to land the highest present value sometimes called optimum use."

In estimating "Highest and Best Use" there are essentially four considerations:

Possible Use:
To what uses is it physically possible to put the site in question

Permissible Use:
What uses are permitted by zoning and deed restrictions on the site in question

Feasible Use:
Which possible and permissible uses will produce the highest net return or highest present worth?

Maximally Productive Use:
Among the feasible uses which use will produce the highest net return or the highest present worth.

The Highest and Best Use of the land or site if vacant and available for use may be different from the Highest and Best Use of the improved property. This will be true when the improvement is not an appropriate use and yet makes a contribution to total property value in excess of the value of the site.

Since the appraisal of the subject property is based on a particular premise of use the highest and best use analysis determines just what this premise of use should be. A highest and best use analysis consists of considering the highest and best use of a property under two assumptions: with a vacant and available site and with the property as improved. These two assumptions on highest and best use are correlated into one final estimate of highest and best use.

**Land as if Vacant and Available**

The physical characteristics of the site impose few development restrictions. Because of its size and shape the parcel has limited uses.

The legal restrictions applicable to the site consist of zoning regulations enforced by the local municipality. These regulations limit the site to residential use.

The immediate area consists of primarily residential and commercial properties with typical supporting commercial overlay. In this sense the subject property melds well with the other properties in the area.

If the site were vacant and available today the highest and best use would be for residential development.

**Property as Improved**

**The subject site was improved with a 3,478 square foot legal 1 family property. The current use of the property is permissible under the existing zoning ordinance.**

The area surrounding the subject property is mostly residential in nature. We considered all information pertaining to the physical characteristics of the site, including size, shape, access, topography and the availability of utilities. Based on a consideration of all pertinent data we have concluded that the subject site is physically suited for its present use.

After estimating the value of the subject land under the present use we considered whether any other uses which are physically possible, legally permissible, or financially feasible would support a higher land value.

We have concluded that the present use of the subject property is the use, which we considered to be maximally productive.

Given that the analysis meets the four criteria of Highest and Best Use, it is concluded that the use, which represents the Highest and Best Use of the subject property was that of its use on April 5, 2014.

## DEFINITION OF MARKET VALUE

The valuation set forth in this report is "market value", defined as the probable price in terms of money which a property will bring in a competitive and open market under all conditions requisite to a fair sale. Specifically, the purchaser and the seller are to each act prudently, knowledgeably, and that the agreed price is not affected by inappropriate stimulus, duress or motivation.

Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to purchaser under conditions whereby:

1) Buyer and seller are typically motivated.

2) Both parties are well informed or well advised; and each acts in what they consider being in their own best interests.

3) A reasonable amount of time is allowed for exposure in the open market.

4) Payment is made in cash or its equivalent.

5) Financing is on terms generally available in the community as of a specified date and typical for the property type in its locale.

6) The price represents an accepted consideration of the property sold unaffected by special financing amounts and/or terms, services, fees, costs or credits occurred in the transaction.

# THE APPRAISAL PROCESS

There are three traditional approaches that can be employed in establishing market value. These approaches generally referred to as the Sales Comparison Approach, the Cost Approach, and the Income Approach.

The Sales Comparison Approach: The Sales Comparison Approach is a set of procedures in which a value indication is derived by comparing the property being appraised to similar properties that have been sold recently, then applying appropriate units of comparison and making adjustments to the sales prices of the comparables based on the elements of comparison. The sales comparison approach may be used to value improved properties, vacant land, or land being considered as though vacant; it is most common and preferred method of land valuation when an adequate supply of comparable sales is available.

The Cost Approach: The Cost Approach is a set of procedures through which a value indication is derived for the fee simple interest in a property by estimating the current cost to construct a reproduction (or replacement for) the existing structure, including an entrepreneurial incentive, deducting depreciation from the total cost, and adding the estimated land value. Adjustments may then be made to the indicated fee simple value of the subject property to reflect the value of the property interest being appraised. The cost approach is not applicable to older improved units and therefore was not developed.

The Income Approach: The Income Capitalization Approach is a set of procedures through which as appraiser derives a value indication for an income-producing property by converting its anticipated benefits (cash flows and reversion) into property value. This conversion can be accomplished in two ways. One year's income expectancy can be capitalized at a market-derived capitalization rate or at a capitalization rate that reflects a specified income pattern, return on investment, and change in the value of the investment. Alternatively, the annual cash flows for the holding period and the reversion can be discounted at a specified yield rate. The income approach is not applicable to small residential properties and therefore was not developed.

Reconciliation: Reconciliation is the last phase of any valuation assignment in which two or more value indications derived from market data are resolved into a final value opinion, which may be either a final range of value or a single point estimate.

**Since this assignment specifically calls for an estimate of market value for a common residential use dwelling for the subject area, the "Sales Comparison Approach", has been utilized and given most emphasis. "Owner-users" as opposed to "owner-investors" typically trade properties similar to the subject. Due to the lack of new construction and limited investment in residential dwellings, the cost approach and income approach are not considered reliable indicators of market value, and are therefore not utilized.**

## THE SALES COMPARISON APPROACH

The Sales Comparison Approach relies upon an analysis of recent sales of similar properties and proves an indication, in theory, of what the subject property itself would sell for as of the date of valuation. Sales comparisons are reduced to a common unit rate, such as the price per square foot. The sales utilized in my analysis are very similar in terms of physical and location characteristics as compared to the subject property and could be considered excellent indicators of market value. After adjusting for differences in time, location, size and utility, these sales provide a range of value in which the subject property will fall. The property rights conveyed were on a Fee Simple basis

In choosing comparable sales, the appraiser focused upon 1 family dwellings similar in size & style as the 29 year old subject. All other adjustments were considered in the valuation process. The comparable sales were analyzed on a price per square foot of gross living area and compared to the subject property for differences in date of sale, location, building size, physical characteristics and amenities. The following is a summary of the salient features for the comparable sales selected.

| COMPARABLE SALE # 1 | |
|---|---|
| LOCATION: | 35 Sunset Road South<br>Albertson, NY 11507 |
| PROXIMITY: | Same block |
| LOT SIZE: | 0.19 acre |
| UNIT DESCRIPTION & SIZE: | 3,014 square foot 1 family frame colonial dwelling |
| PARKING: | 2 car garage |
| SELLING PRICE: | $950,000 |
| TRANSFER DATE: | 7/17/2013 |
| SELLING PRICE PER SQUARE FOOT: | $315.19 |
| DATA SOURCE:<br>REFERENCES:<br>COMMENTS: | Geodata Plus Inc.-**LIBOR STRATUS MLS ID # 2576690**- Exterior Inspection. This was a relevant sale of a 1 family colonial dwelling on a similar sized parcel located on the same block. Estimated to be in superior condition per exterior inspection & listing review. Affected by high traffic along its rear property line. |



**PHOTOGRAPH OF COMPARABLE # 1**

| COMPARABLE SALE # 2 | |
|---|---|
| LOCATION: | 59 Park View<br>Albertson, NY 11507 |
| PROXIMITY: | 0.33 miles |
| LOT SIZE: | 0.32 acre |
| UNIT DESCRIPTION & SIZE: | 3,150 square foot 1 family frame contemporary dwelling |
| PARKING: | 2 car garage |
| SELLING PRICE: | $980,000 |
| TRANSFER DATE: | 8/7/2013 |
| SELLING PRICE PER SQUARE FOOT: | $311.11 |
| DATA SOURCE: REFERENCES: COMMENTS: | Geodata Plus Inc.-**LIBOR STRATUS MLS ID # 2590333-** Exterior Inspection. This was a relevant sale of a 1 family colonial dwelling on a larger sized parcel located in the immediate vicinity. Cited to be in renovated condition per listing review. Located on a superior, quieter block |



**PHOTOGRAPH OF COMPARABLE # 2**

| COMPARABLE SALE # 3 | |
|---|---|
| LOCATION: | 32 Crest Hollow<br>Albertson, NY 11507 |
| PROXIMITY: | 0.33 miles |
| LOT SIZE: | 0.19 acre |
| UNIT DESCRIPTION & SIZE: | 3,213 square foot 1 family frame colonial dwelling |
| PARKING: | 2 car garage |
| SELLING PRICE: | $881,500 |
| TRANSFER DATE: | 7/1/2013 |
| SELLING PRICE PER SQUARE FOOT: | $274.35 |
| DATA SOURCE:<br>REFERENCES:<br>COMMENTS: | Geodata Plus Inc.-**LIBOR STRATUS MLS ID # 2487060**- Exterior Inspection. This was a relevant sale of a smaller sized 1 family colonial dwelling on a similar sized parcel located in the immediate vicinity. Estimated to be in superior condition per listing review & exterior inspection. Located on a superior, quieter block |



**PHOTOGRAPH OF COMPARABLE # 3**

| COMPARABLE SALE # 4 | |
|---|---|
| LOCATION: | 154 Evans Avenue<br>Albertson, NY 11507 |
| PROXIMITY: | 0.38 miles |
| LOT SIZE: | 0.11acre |
| UNIT DESCRIPTION &  SIZE: | 2,530 square foot  1 family frame colonial dwelling |
| PARKING: | 2 car garage |
| SELLING PRICE: | $770,000 |
| TRANSFER DATE: | 7/1/2013 |
| SELLING PRICE PER SQUARE FOOT: | $304.34 |
| DATA SOURCE:<br>REFERENCES:<br>COMMENTS: | Geodata Plus Inc.-**LIBOR STRATUS MLS ID # 2571551**- Exterior Inspection. This was a relevant sale of a smaller  sized 1 family colonial  dwelling on a smaller  sized parcel located in the immediate vicinity. Estimated to be in superior condition per listing review & exterior inspection. Located on a superior, quieter block |



PHOTOGRAPH OF COMPARABLE # 4



## DIRECT SALE COMPARISON APPROACH SUMMARY

The comparable sales were analyzed on a price per square foot of gross living area and compared to the subject property for differences in date of sale, location, building size, physical characteristics and amenities.

## INDICATED VALUE VIA THE DIRECT SALES COMPARISON APPROACH:
## EIGHT  HUNDRED EIGHTY THOUSAND DOLLARS
### $880,000

## COST APPROACH

Please note that the subject property is a typical 1 family property for the subject area. There is ample verifiable supporting sales data. The "Direct Sales Comparison Approach" can therefore most effectively ascertain the overall marketability of the subject property. The "Cost Approach" is therefore considered "not applicable".

Due to the lack of residential new construction, and the scarcity of available building lots in the subject area, the "Cost Approach" is not considered a valid indicator of market value, and was not considered in this report.

## INDICATED VALUE BY THE COST APPROACH

**Not Applicable**

## THE INCOME APPROACH

The underlying assumption of the Income Approach is that the typical, prudent purchaser will pay no more for a property than a similar investment offering a competitive return. The value is derived through the capitalization process. This estimate is based upon an analysis of the property's potential net revenue flow:

The following is the methodology applicable in this approach:

1)    The projection of the potential income from all sources which a competent owner or manager may legally generate from the realty over a specific or estimated period of time.

2)    An estimate of vacancy and bad debts, as well as expenses incurred in the operation of the realty. These deductions, subtracted from the potential gross income, result in a stabilized net operating income.

3)    The development of an overall rate. This includes the weighted affect of a percentage return to the equity position, the weighted effect of the debt service and the present worth of the future disposition or refinancing of the realty.

4)    The overall rate, when divided into the net operating income, produces the final estimates of value

---

**Properties similar to the subject are typically not traded for their income potential. The "Income Approach" was therefore not considered to be a statistically viable indicator of value, and is consequently not utilized in this report.**

---

## INDICATED VALUE BY THE INCOME APPROACH:

**Not Applicable**

## RECONCILIATION OF VALUE

In the previous sections of this appraisal report, the three approaches to estimate value have been considered, utilized, and emphasized as they apply to the fee simple of the ownership of the subject property and these indicated values are:

| | |
|---|---|
| Market Data/Direct Sales Comparison | $880,000 |
| Cost Approach | Not Applicable |
| Income Approach | Not Applicable |

Since this assignment calls for the appraisal of a 1 family property, the Direct Sales Comparison Approach was given most emphasis. Supporting sales were deemed to be comparable to the subject property were ascertained. Adjustments were made to these market supporting comparable sales for any differences between them and the subject property. All comparable sales were visited and adjusted where necessary for value influencing characteristics such as location, condition, and size. Once reconciled, these comparables provided reliable insight as to the subject's market value.

The Cost Approach was considered as "not applicable" as the subject property is typical to the area. There is ample supporting market data consequently making it inappropriate to place any emphasis on the cost approach.

The Income Approach was considered "not applicable". These types of properties are not typically purchased for their rent potential to an investor.

Assumptions made in the comparable market analysis were both reasonable and consistent. It is our opinion that the analysis yielded an estimate which best represents the Market Value of the subject property as previously defined in this report.

It is our judgment and opinion that the Market Value of the subject property as of April 5, 2014 is:

### EIGHT HUNDRED EIGHTY THOUSAND DOLLARS
### $880,000

Respectfully,

Stephen Ellsworth
Senior Appraiser
NYS Certification # 46000026754

# ADDENDUM SECTION



FRONT PHOTO



REAR



CEMETERY PROPERTY ABUTTING REAR OF PROPERTY



PUBLIC SCHOOL GROUNDS ABUTTING SIDE OF PROPERTY



STREET PHOTO



ALTERNATE STREET PHOTO



KITCHEN



LIVING ROOM



DEN



BEDROOM

23



BEDROOM



BATH



BOILER



DEFERRED MAINTENANCE



DEFERRED MAINTENANCE



DEFERRED MAINTENANCE

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

**CONTINGENT AND LIMITING CONDITIONS:** The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to do it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.
2. The appraiser may have provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.
3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.
4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in questions, unless specific arrangements to do so have been made beforehand.
5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.
6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must NOT be considered as any type environmental assessment or property inspection of the property
7. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.
8. The appraiser may have based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption of the improvements will be performed in a workmanlike manner.
9. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identify and professional designations, and references to any professional appraisal organizations of the firm with which the appraiser is associated) to anyone other than the borrower, the mortgage of its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department agency, or instrumentality of the United States or any state of the District Of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service (s) without having to obtain the appraiser's prior written consent.
The appraiser's written consent and approval must also be obtained before the appraisal can be

conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:** The appraiser certifies and agrees that:

1. I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a NEGATIVE adjustment is made to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a POSITIVE adjustment is made to increase the adjusted sales price of the comparable.

2. I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3. I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4. I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5. I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6. I was not required to report predetermined value or direction in value that favors the cause of the client or any related party, the amount of value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7. I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply (unless specifically stated so). I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise state in the reconciliation section.

8. I have personally inspected the subject property. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9. I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal of the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I take no responsibility for it.

Respectfully,

Stephen Ellsworth
Senior Appraiser
NYS Certification # 46000026754